IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BOSS MANAGEMENT SERVICES, INC.,  §
                                 §
         Plaintiff,              §
                                 §
v.                               §    CIVIL ACTION NO. H-06-2397
                                 §
ACCEPTANCE INSURANCE COMPANY,    §
et al.                           §
                                 §
         Defendants.             §

## MEMORANDUM OPINION

Pending before the court[1] are:  1) Motion for Summary Judgment Regarding the Gardens Lawsuit filed by Defendants Indian Harbor Insurance Company ("Indian Harbor") and Atlantic Casualty Insurance Company ("Atlantic")(Docket Entry No. 61); 2) Motion for Summary Judgment Regarding the Azalea Lakes, Riverwalk, and Pope Lawsuits filed by Defendants Indian Harbor and Atlantic (Docket Entry No. 64); 3) Motion for Summary Judgment filed by Defendant Acceptance Insurance Company ("AIC")(Docket Entry No. 76); 4) Motion for Summary Judgment filed by Defendant Republic-Vanguard Insurance Company ("Republic")(Docket Entry No. 78); and 5) Motion for Partial Summary Judgment filed by Plaintiff (Docket Entry No. 79).

The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **DENIES** Defendants Indian Harbor and Atlantic's summary judgment

---

[1]       The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 84, 94, 95, 105, 114.

motions, **DENIES IN PART AND GRANTS IN PART** Defendant AIC's summary judgment motion, **DENIES IN PART and GRANTS IN PART** Defendant Republic's summary judgment motion, and **GRANTS** Plaintiff's partial summary judgment motion.

## I.  Case Background

This insurance case centers on the respective obligations of four insurance companies under Commercial General Liability ("CGL") policies that they issued to Plaintiff.

## A.  The Insurance Policies

Defendant AIC's policies were in effect from September 29, 1998, through September 29, 1999, and September 29, 1999, through September 29, 2000.[2]  Defendant Indian Harbor's policies were in effect September 29, 2000, through September 29, 2001, and September 29, 2001, through September 29, 2002.[3]  Defendant Atlantic's policy was in effect September 18, 2002, through

---

[2]  Brief in Support of Defendant AIC's Motion for Summary Judgment, Docket Entry No. 77, Ex. A1, Defendant AIC's 1998-99 CGL policy and extension endorsement for 1999-2000 ("Defendant AIC's policies"); see also Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 8.

[3]  Appendix to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 67, Ex. 1A, Defendant Indian Harbor's 2000-01 CGL policy ("Defendant Indian Harbor's 2000-01 policy"); Ex. 1B, Defendant Indian Harbor's 2001-02 CGL policy ("Defendant Indian Harbor's 2001-02 policy"); see also Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 9.  Defendant Indian Harbor's 2001-02 policy extended virtually all of the terms of the expiring policy.  Defendant Indian Harbor's 2001-02 policy.  Where the policy terms of the two policies are the same, the court refers to the policies collectively as "Defendant Indian Harbor's policies."

September 18, 2003.[4]  Defendant Republic's policy was in effect
September 18, 2003, through September 18, 2004.[5]  All of the
policies were issued to Plaintiff, which is a business located in
Texas, and provided general aggregate limits of $2 million and
products-completed operations aggregate limits of $2 million.[6]

All of the policies contain nearly identical coverage language
for bodily injury and property damage liability:

1.  Insuring Agreement

    a.  We will pay those sums that the insured
becomes legally obligated to pay as damages
because of "bodily injury" or "property
damage" to which this insurance applies.  We
will have the right and duty to defend the
insured against any "suit" seeking those
damages.  However, we will have no duty to
defend the insured against any "suit" seeking
damages for "bodily injury" or "property
damage" to which this insurance does not
apply.  We may, at our discretion, investigate
any "occurrence" and settle any claim or
"suit" that may result.  But:

    (1)  The amount we will pay for damages is
limited as described in LIMITS OF
INSURANCE (SECTION III); and

    (2)  Our right and duty to defend end when we
have used up the applicable limit of

---

[4]      Appendix to Defendants Indian Harbor and Atlantic's Motion for
Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 67, Ex. 1C,
Defendant Atlantic's 2002-03 CGL policy ("Defendant Atlantic's policy"); see also
Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 10.

[5]      Defendant Republic's Motion for Summary Judgment, Docket Entry No.
78, Ex. 3, 2003-04 CGL policy ("Defendant Republic's policy"); see also
Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 11.

[6]      Defendant AIC's policies; Defendant Indian Harbor's policies;
Defendant Atlantic's policy; Defendant Republic's policy; see also Plaintiff's
First Amended Complaint, Docket Entry No. 46, ¶¶ 8-11.

> insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.
>
> b.   This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> (2)   The "bodily injury" or "property damage" occurs during the policy period.[7]

The policies define "property damage" as:

> a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[8]

An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[9]

---

[7]    Defendant AIC's policies; <u>see also</u> Defendant Indian Harbor's 2000-01 policy (using identical language with one typographical error); Defendant Indian Harbor's 2001-02 policy (using identical language with slight typesetting variances); Defendant Atlantic's policy (using identical language); Defendant Republic's policy (using identical language except for one minor difference).

[8]    Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

[9]    Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

4

The policies of Defendants Indian Harbor and Atlantic also each contain an exclusion for claims in process that states:

> This insurance does not apply to:
>
> 1.    any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown:
>
>       a.    which first occurred prior to the inception date of this policy; or
>       b.    which is, or is alleged to be, in the process of occurring as of the inception date of this policy.
>
> 2.    any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.
>
> We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.[10]

All of the policies also contain exclusions concerning the insured's work or product.  Exclusion j(5) prevents coverage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."[11]  Also excluded from coverage is "[t]hat particular part of any property that must be restored,

---

[10]    Defendant Indian Harbor's policies; Defendant Atlantic's policy.

[11]    Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

repaired or replaced because 'your work' was incorrectly performed on it" under exclusion j(6).[12]  However, "this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'"[13]  The policies define "your work" as "[w]ork or operations performed by you or on your behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations" and to include warranties made at any time regarding the fitness, quality, durability, performance or use of the work and the provision or omission of warnings or instructions.[14]

The "products-completed operations hazard" definition reads:

a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1)   Products that are still in your physical possession; or

    (2)   Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

        (a)   When all of the work called for in your contract has been completed.

---

[12]   Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

[13]   Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

[14]   Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

6

      (b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

          Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.  Does not include "bodily injury" or "property damage" arising out of:

   (1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3)  Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.[15]

Also excluded by the policies is property damage to the insured's product arising out of it or any part of it (exclusion k) and to the insured's work arising out of it or any part of it and included in the "products-completed operations hazard" (exclusion

---

[15]     Defendant AIC's policies; Defendant Indian Harbor's policies (including slight typesetting variations); Defendant Atlantic's policy; Defendant Republic's policy (containing insignificant differences).

l).[16]  The insured's product is "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" the insured or others acting for the insured and "[c]ontainers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products."[17]  As does the insured's work, product includes warranties and the provision or omission of warnings or instructions.[18]

## B.  The Underlying Lawsuits

Plaintiff is a masonry contractor that performed work in connection with three condominium construction projects in South Carolina, all of which were completed for occupancy by the end of 1998.[19]  Four lawsuits, filed in South Carolina, generally allege that property damage, including mold, mildew, rot, rust, and deterioration, to the interior of the condominium buildings

---

[16]    Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

[17]    Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

[18]    Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

[19]    See Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 12; Appendix to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 68, Ex. 2C, certificates of occupancy for The Gardens units; Plaintiff's Response to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment, Docket Entry No. 97, Ex. H, Affidavit of John Stiles, Attachs. 1-5 (unnumbered), certificates of occupancy for Azalea Lakes units; Ex. I, Affidavit of John Stiles, Attachs. 1-4 (unnumbered), certificates of occupancy for Riverwalk units.

occurred as a result of moisture infiltration caused by construction defects.[20]

A horizontal property regime and a property owners' association filed <u>The Gardens at Cypress Bay, et al. v. Heritage Communities, Inc., et al.</u>, Civil Action No. 03-CP-26-1421, ("The Gardens" or "The Gardens Lawsuit") in Horry County, South Carolina, on March 14, 2003.[21]  They sued the corporations believed to be responsible for the planning and development of the condominium project, the project's general contractors, the project's architect, numerous subcontractors and installers who performed work on the project, and the manufacturers of windows and waterproofing materials used for the project.[22]  The Fifth Amended Complaint in the case states:

> 23.  Since completion of the Project, problems with water infiltration into the interior of the buildings has occurred.  An inspection of the buildings has resulted in the discovery of a number of defects including water proofing, structural and safety defects.  Upon

---

[20]    Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 14; <u>see also</u> Appendix to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 68, Ex. 2A, The Gardens Lawsuit Fifth Amended Complaint, ("The Gardens Complaint"), ¶ 25; Appendix to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 71, Ex. 2J, Azalea Lakes Lawsuit Sixth Amended Complaint, ("Azalea Lakes Complaint"), ¶ 26; Appendix to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 71, Ex. 2L, Riverwalk Lawsuit Fourth Amended Complaint, ("Riverwalk Complaint") ¶ 26; Appendix to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 71, Ex. 2N, Pope Lawsuit Second Amended Complaint, ("Pope Complaint"), ¶ 25.

[21]    <u>See</u> The Gardens Complaint; Defendant Republic's Brief in Support of its Motion for Summary Judgment, Docket Entry No. 78, Ex. 4, The Gardens Lawsuit Cover Sheet for Civil Actions.

[22]    <u>See</u> The Gardens Complaint, ¶¶ 2-20.

information and belief, the problems or defects at the
Project are a result of defective design and/or
construction.

. . . .

25.   The deficiencies in the design and/or
construction have allowed water to intrude into the
buildings causing rot, deterioration and damage to the
building components.  The Project has suffered actual
damage caused by exposure to water seeping into walls and
floors as a result of the negligent construction methods
of the Defendants.[23]

One of the defendant subcontractors, BR Brick and Masonry,

Inc., ("BR Brick") impleaded Plaintiff, stating that it was

entitled to judgment against Plaintiff to the extent that The

Gardens Lawsuit plaintiffs obtain judgment against BR Brick for

breach of implied warranties, for breach of contract, or for

negligence directly traceable to Plaintiff.[24]  BR Brick also brought

a claim for common law indemnification.[25]

A second lawsuit, <u>Azalea Lakes Property Owners' Association,

Inc. v. Heritage Communities, Inc., et al.</u>, Civil Action No. 06-CP-

26-1191R, ("Azalea Lakes" or "Azalea Lakes Lawsuit") was filed in

Horry County, South Carolina, on May 28, 2003.[26]  The Azalea Lakes

Complaint is very similar to The Gardens Complaint in terms of the

---

[23]   <u>Id.</u> at ¶¶ 23, 25.

[24]   Appendix to Defendants Indian Harbor and Atlantic's Motion for
Summary Judgment Regarding The Gardens Lawsuit, Docket Entry No. 68, Ex. 2B, BR
Brick and Masonry, Inc.'s Third Party Complaint, ¶¶ 7, 12, 16.

[25]   <u>See id.</u> at ¶¶ 17-22.

[26]   <u>See</u> Azalea Lakes Complaint; Defendant Republic's Brief in Support of
its Motion for Summary Judgment, Docket Entry No. 78, Ex. 6, the Azalea Lakes
Lawsuit Cover Sheet for Civil Actions.

named defendants, which include BR Brick, and the allegations.[27] Specifically, the Azalea Lakes plaintiffs alleged, "Subsequent to the buildings in Azalea Lakes being opened for occupancy, areas of moisture intrusion became apparent."[28]

The third-party complaint filed by BR Brick in the Azalea Lakes Lawsuit is substantially the same as the one filed in The Gardens Lawsuit except that, in addition to the four causes of action raised there, BR Brick brought a claim for contractual indemnification.[29]

Riverwalk at Arrowhead Country Club Property Owners' Association, Inc. v. Heritage Communities, Inc., et al., Civil Action No. 03-CP-26-7169, ("Riverwalk" or "Riverwalk Lawsuit") was filed in Horry County, South Carolina, on December 8, 2003.[30] The named defendants include the project's developers, general contractor, various subcontractors, architects, materials manufacturers, and installers.[31] Plaintiff is a named defendant in

---

[27]   See generally Azalea Lakes Complaint.

[28]   Id. at ¶ 22.

[29]   See generally Appendix to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 71, Ex. 2K, BR Brick's Answer to Plaintiff's Sixth Amended Complaint and Third-Party Complaint.

[30]   See Riverwalk Complaint; Defendant Republic's Brief in Support of its Motion for Summary Judgment, Docket Entry No. 78, Ex. 8, the Riverwalk Lawsuit Cover Sheet for Civil Actions.

[31]   See Riverwalk Complaint, ¶¶ 2-21.

the Riverwalk Lawsuit.[32]  The complaint alleges, "Subsequent to the buildings of the Regime being opened for occupancy, some of the buildings began to exhibit evidence of moisture intrusion."[33]

Like the other three lawsuits, Tony L. Pope, et al. v. Heritage Communities, Inc., et al., Civil Action No. 05-CP-26-3289, ("Pope" or "Pope Lawsuit") was filed in Horry County, South Carolina; but, unlike the others, it was not filed until 2005.[34] The Pope plaintiffs, as individuals and as representing a class, alleged that, "[s]ubsequent to the buildings of Riverwalk being opened for occupancy, some of the buildings began to exhibit evidence of moisture intrusion into the interior of the walls."[35] The defendants in the Pope Lawsuit include the development corporations, the general contractor, the architectural firms, the window manufacturer, the siding installers, and multiple subcontractors, including BR Brick.[36]

---

[32]    See id. at ¶ 19.

[33]    Id. at ¶ 22.

[34]    Pope Complaint; Defendant Republic's Brief in Support of its Motion for Summary Judgment, Docket Entry No. 78, Ex. 9, original complaint in the Pope Lawsuit.

[35]    Pope Complaint, ¶ 21; Defendant Republic's Brief in Support of its Motion for Summary Judgment, Docket Entry No. 78, Ex. 9, the Pope Lawsuit, Complaint.

[36]    Pope Complaint, ¶¶ 3-20.

In its answer to the Pope Lawsuit Second Amended Complaint, BR Brick impleaded Plaintiff.[37]   The substance of the Third-Party Complaint is substantially the same as the ones in The Gardens and Azalea Lakes.[38]

## C.   The History of this Lawsuit

Upon service of process in the underlying lawsuits, Plaintiff tendered claims for defense and indemnity to all Defendants.[39]  AIC agreed to defend the claims against Plaintiff under a reservation of rights.[40]  The other three insurance companies denied coverage.[41] The Gardens lawsuit since has settled with Defendant AIC covering the costs of Plaintiff's defense and indemnity.[42]

On April 10, 2006, Plaintiff filed suit in South Carolina state court.[43]  Championing the application of South Carolina contract law, Plaintiff sought a declaration that all four insurers owed Plaintiff duties of defense and indemnity based on the

---

[37]     See Appendix to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 72, Ex. 20, BR Brick's Answer to Plaintiffs' Second Amended Complaint and Third-Party Complaint.

[38]     See generally id.

[39]     Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 15.

[40]     Id.

[41]     Id.

[42]     See Plaintiff's Response to Defendants Indian Harbor and Atlantic's Motion for Summary Judgment, Docket Entry No. 97, p. 2, n.2.

[43]     See Notice of Removal, Docket Entry No. 1, Attach. 3 (unnumbered), Complaint.

allegations in the underlying lawsuits.[44]  Plaintiff also brought
a claim from breach of contract.[45]  Defendants removed the action
to the United States District Court for the District of South
Carolina.[46]  Defendants Indian Harbor and Atlantic moved the court
to dismiss the action for lack of personal jurisdiction or,
alternatively, to transfer venue to the Southern District of
Texas.[47]  Defendant Republic joined the motion, and Defendant AIC
opposed it.[48]  The court transferred the case to this court in July
2006.[49]

At about the same time as Plaintiff filed suit in South
Carolina, Defendant AIC filed a declaratory action in the United
States District Court for the Southern District of Texas.[50]
Defendant AIC sought costs expended in defense of Plaintiff in The
Gardens lawsuit.[51]  In November 2006, the court consolidated
Defendant AIC's case with the South Carolina lawsuit.[52]  Defendant

---

[44]    See id. at ¶¶ 13, 18-21.

[45]    See id. at ¶¶ 22-26.

[46]    See Notice of Removal, Docket Entry No. 1.

[47]    See Motion to Dismiss or, in the Alternative, to Transfer Venue,
Docket Entry No. 5.

[48]    See Order and Opinion, Docket Entry No. 23, p. 2.

[49]    Minute Entry, Docket Entry No. 15; Minute Order, Docket Entry No. 16.

[50]    See Acceptance Insurance Company v. Boss Management Services, Inc.,
et al., Civil Action No. 4:06-1281, Docket Entry No. 1.

[51]    See id.

[52]    Order, Docket Entry No. 40.

AIC amended its complaint with leave of court to expand its claims to cover all four of the underlying lawsuits.[53]

The parties began filing summary judgment motions in May of this year.  Every party to the case has at least one pending summary judgment motion.  The court addresses all of the motions in this Memorandum Opinion.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

---

[53]    See Motion for Leave to File Amended Pleadings, Docket Entry No. 83; Amended Original Cross Action, Docket Entry No. 119.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III.  Applicable Law

This case is properly before the court on the basis of diversity jurisdiction.  Plaintiff consistently has pled that South Carolina law governs this dispute.[54]  The District of South Carolina court stated in its order on transfer of venue, "[T]his court believes Texas law should govern this action."[55]  In reaching that conclusion, the court noted, "CGL coverage [was provided] for a business located in Texas, and the insurance contracts did not contemplate insuring any South Carolina interests."[56]  In its First Amended Complaint, which was filed four months after the court's ruling on the applicable law, Plaintiff reasserted that South Carolina law applies to this action.[57]  However, Plaintiff apparently has now acquiesced to the application of Texas law as evidenced by its reliance on Texas law in its motion briefing. This court, therefore, applies Texas law.

Texas law is clear that an insurer's duty to defend and its duty to indemnify are separate duties, and an insurer may have a duty to defend even when it has no duty to indemnify.  Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997). That is to say, allegations raised against the insured may fit

---

[54]    See Notice of Removal, Docket Entry No. 1, Attach. 3 (unnumbered), Complaint, ¶ 13; Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 12.

[55]    Order and Opinion, Docket Entry No. 23, p. 5.

[56]    Id. at p. 7.

[57]    See Plaintiff's First Amended Complaint, Docket Entry No. 46, ¶ 12.

17

within the policy coverage and trigger a duty to defend even if the facts actually established in the underlying suit negate the insurer's duty to indemnify.  Id.; see also GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 310 (Tex. 2006). However, if the factual allegations in an underlying complaint fall outside the policy coverage, neither duty is triggered. See Griffin, 955 S.W.2d at 84.

When contemplating whether the underlying litigation triggers policy coverage, the court examines the factual allegations in the pleading and the language of the insurance policy.  See Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 350 (5th Cir. 2005)(applying Texas law); Fielder Rd. Baptist Church, 197 S.W.3d at 307, 308; Griffin, 955 S.W.2d at 82.  Known as the "eight-corners rule" or the "complaint-allegation rule," this method requires that the court compare only the "four corners" of the pleading with the "four corners" of the policy.  Allstate Ins. Co. v. Disability Servs. of the Sw. Inc., 400 F.3d 260, 263 (5th Cir. 2005)(applying Texas law); see also Fielder Rd. Baptist Church, 197 S.W.3d at 308. "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination . . . ." Liberty Mut. Ins. Co. v. Graham, 473 F.3d 596, 600 (5th Cir. 2006)(applying Texas law).

As of yet, the Texas Supreme Court has not recognized any exception to the eight-corners rule.  In dicta, it favorably cited

a Fifth Circuit Court of Appeals decision in which the federal court predicted that, "in the unlikely situation that the Texas Supreme Court were to recognize an exception to the strict eight corners rule," Texas' highest court likely would limit the exception to cases in which "it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 531 (5th Cir. 2004)(applying Texas law); Fielder Rd. Baptist Church, 197 S.W.3d at 308-09. The Texas Supreme Court explicitly rejected the use of extrinsic evidence that was relevant both to coverage and to the merits of the underlying action, but did not rule on the validity of a more narrow exception that would allow extrinsic evidence solely on the issue of coverage. See Fielder Rd. Baptist Church, 197 S.W.3d at 309, 310. Rather, the Texas Supreme Court hinted that a more narrow exception may be appropriate in some cases. Id. at 310.[58] Even so, the Texas court was steadfast in its rejection of the use of overlapping evidence, noting that to allow such evidence would

---

[58]    A Texas court of appeals decision took a similar approach. See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., No. 14-05-00487-CV, ___ S.W.3d ___, 2006 WL 1892669, at **5-6 (Tex. App.-Houston [14th Dist.] July 6, 2006, pet. granted)(not released for publication)(rejecting a more permissive rule that would allow the consideration of extrinsic evidence whenever the evidence does not contradict the pleadings, but suggesting, without explicitly stating, that it would allow extrinsic evidence to establish fundamental coverage facts).

lead to the conflation of the insurer's duty to defend with its duty to indemnify.  Id. at 309, 310.

The burden of establishing a duty to defend falls first on the insured to demonstrate that the claims brought against it potentially state a cause of action that is covered by the policy. Reyna, 401 F.3d at 350.  When reviewing the policy terms, the court employs general rules of contract construction.  Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 740-41 (Tex. 1998).  Absent any ambiguity, the meaning imparted by the contract language can be decided as a matter of law.  Utica Nat'l Ins. Co. of Tex. v. Fidelity & Cas. Co. of N.Y., 812 S.W.2d 656, 661 (Tex. App.–Dallas 1991, writ denied).  If the insured demonstrates potential coverage, the insurer must show that the plain language of a policy exclusion disallows coverage as to all claims.  Reyna, 401 F.3d at 350.  Exclusions are strictly construed in favor of coverage. Disability Servs. of the Sw. Inc., 400 F.3d at 263.

The court is to focus on the factual allegations in the pleadings, not the legal theories being asserted.  Reyna, 401 F.3d at 350; Mid-Continent Cas. Co. v. Safe Tire Disposal Corp., 16 S.W.3d 418, 421 (Tex. App.–Waco 2000, pet. denied).  The insurer's duty depends, then, on whether the allegations in the underlying complaint, without regard to their veracity, would potentially state a cause of action that fits within the policy's coverage. See Loving Home Care, Inc., 363 F.3d at 528; Fielder Rd. Baptist

<u>Church</u>, 197 S.W.3d at 308.  The court interprets the allegations liberally and resolves all doubts regarding the duty to defend in favor of the insured.  <u>King v. Dallas Fire Ins. Co.</u>, 85 S.W.3d 185, 187 (Tex. 2002); <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 141 (Tex. 1997). However, the court may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage.  <u>Guar. Nat'l Ins. Co. v. Azrock Indus.</u>, 211 F.3d 239, 243 (5th Cir. 2000)(applying Texas law); <u>Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d at 142.

Under Texas law, an insurer's duty to indemnify is narrower than its duty to defend.  <u>St. Paul Ins. Co. v. Tex. Dep't of Transp.</u>, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). The duty to indemnify is triggered only by the actual facts establishing the insured's liability in the underlying litigation. <u>Trinity Universal Ins. Co. v. Cowan</u>, 945 S.W.2d 819, 821 (Tex. 1997).  Accordingly, "an insurer may have a duty to defend but, eventually, no duty to indemnify." <u>Griffin</u>, 955 S.W.2d at 82.

### IV.  Defendants Indian Harbor and Atlantic's Motions

In two motions, Defendants Indian Harbor and Atlantic move for summary judgment as to all of the claims that Plaintiff pursues against them with regard to the four underlying lawsuits. Defendants Indian Harbor and Atlantic argue that they do not have a duty to defend Plaintiff in those lawsuits because the underlying

complaints failed to allege facts within coverage of the insurance policies.  This assertion rests on three arguments:  1) plaintiffs in the underlying suits failed to allege that they experienced property damage from water intrusion within the policy period; 2) the policies' exclusions for claims in process avoid coverage; and 3) the common law fortuity doctrine precludes coverage.  Defendants Indian Harbor and Atlantic contend, additionally, that they have no duty to indemnify Plaintiff for any of the lawsuits.  Absent a duty to defend or to indemnify, they argue, as a matter of law, they did not breach the insuring contracts.

Plaintiff responds to the motions with regard only to the lawsuits that remain pending, explaining that it seeks no relief in connection with The Gardens lawsuit, which has settled, because Defendant AIC fully defended and indemnified Plaintiff and is, thereby, subrogated to Plaintiff's claims against the other insurers.  Plaintiff objects to Defendants Indian Harbor and Atlantic's reliance on extrinsic evidence in support of summary judgment.[59]  Additionally, Plaintiff contends that Defendants Indian Harbor and Atlantic improperly focus on when the construction took place rather than when the property damage occurred and that neither the claims-in-process exclusion nor the fortuity doctrine operates to preclude coverage when considered in light of the

---

[59]    Plaintiff also objects to the evidence on the grounds of relevancy and hearsay.  The court **OVERRULES** Plaintiff's objections on these grounds.

allegations in the underlying complaints.  Plaintiff also argues that a ruling on the duty to indemnify is premature.

Defendant AIC responds in opposition to both of the motions and joins Plaintiff's contention that the extrinsic evidence submitted by Defendants Indian Harbor and Atlantic should not be considered in determining the duty to defend.[60]  Even if the court does consider the evidence, according to Defendant AIC, a summary judgment ruling cannot be made as to when the damages manifested because the evidence does not establish those dates conclusively. Because Defendants Indian Harbor and Atlantic failed to establish that the damages manifested prior to the inception of their policies, Defendant AIC continues, none of their arguments in favor of summary judgment applies.

Based on the language of the policies at issue, the coverage issue hinges on whether the property damage, defined as "physical injury to tangible property," occurred during the policy period.[61] The policy language clearly requires that, to be covered, the property damage must occur during the policy period, without regard to when the "occurrence" that caused the damage happened.  The issue, then, is not when the allegedly defective construction took place, but when the property damage occurred.  See Pine Oak

---

[60]     Defendant AIC also objects to the summary judgment evidence as hearsay.  The court **OVERRULES** that objection.

[61]     Defendant AIC's policies; Defendant Indian Harbor's policies; Defendant Atlantic's policy; Defendant Republic's policy.

Builders, Inc., 2006 WL 1892669, at *8 n.7 (pointing out that CGL policies do not cover the cost to repair, replace, or remediate defective construction itself, but only cover property damage occurring during the policy period).

The particular coverage question for these motions, then, is whether the underlying petitions potentially allege that the property damage (mold, mildew, rot, rust, and deterioration) occurred within the coverage period of Defendants Indian Harbor and Atlantic's policies (collectively September 29, 2000, through September 18, 2003).   This question pervades all three of Defendants Indian Harbor and Atlantic's bases for summary judgment on the duty to defend issue.

The first basis is a pure coverage matter.  The second relies on the claims-in-process exclusion, which excludes coverages for loss arising out of property damage that "first occurred prior to the inception date" of the policies or was "in the process of occurring as of the inception date" of the policies.[62]  Thus, the issue is the same.[63]

---

[62]    Defendant Indian Harbor's policies; Defendant Atlantic's policy. The claims-in-process exclusion also precludes coverage for claims that are in the process of "settlement, adjustment or 'suit.'"   Defendant Indian Harbor's policies; Defendant Atlantic's policy.  Defendants Indian Harbor and Atlantic do not allege that this second prong of the exclusion applies to this case.

[63]    A recent opinion clarified that this type of exclusion "is not based on the beginning of the process leading to the ultimate injury or damage[, but] on the beginning of the actual injury or damage."  Williams Consol. I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co., ___ S.W.3d ___, No. 14-06-00075-CV, 2007 WL 2178509, at **4, 5 (Tex. App.–Houston [14th Dist.] July 31, 2007, no pet.)(not released for publication)(also stating that no coverage exists for property damage that first occurred before the effective date of the policy, but coverage is not excluded for property damage that occurs during the policy period simply

The third basis asserted by Defendants Indian Harbor and Atlantic is the fortuity doctrine, which consists of the known-loss and the loss-in-progress doctrines.  <u>Lennar Corp. v. Great Am. Ins. Co.</u>, 200 S.W.3d 651, 687 (Tex. App.–Houston [14th Dist.] 2006, pet. filed).  Together, the doctrines preclude insurance coverage for losses that the insured knew had occurred and losses that the insured knew or should have known were ongoing at the at the time it purchased the policy.  <u>Id.</u> at 687-88.  Although the fortuity doctrine centers on the insured's knowledge of preexisting or ongoing damage, the doctrine is necessarily inapplicable when the property damage is alleged to have occurred within the policy period.  Therefore, the same coverage question will determine whether the fortuity doctrine may be applicable to avoid a duty to defend.

Before discussing the allegations in the underlying pleadings, the court must determine the appropriate test for assessing when duty to defend coverage is triggered.  To answer this question, the court has reviewed numerous cases.

In 1994, the Texas Supreme Court noted "in passing" that courts across the nation had developed at least five tests for determining when coverage was triggered for "continuing occurrences."  <u>Am. Physicians Ins. Exch. v. Garcia</u>, 876 S.W.2d 842, 853 n.20 (Tex. 1994).  The tests identified by the court were:  1)

---

because it was caused by a process that began before the policy period).

pure or strict manifestation rule, deeming coverage triggered by actual discovery of the injury; 2) relaxed manifestation rule, deeming coverage triggered in first policy period during which discovery was possible; 3) exposure rule, deeming coverage triggered in any policy period when exposure to the cause occurred; 4) injury-in-fact rule, deeming coverage triggered in personal injury cases when the "body's defenses are 'overwhelmed;'" and 5) multiple or triple-trigger approach, requiring coverage during periods of continuing exposure and manifestation.  Id.; see also Pilgrim Enters., Inc. v. Md. Cas. Co., 24 S.W.3d 488, 495 (Tex. App.–Houston [1st Dist.] 2000, no pet.).  Acknowledging that the only Texas precedent at the time followed the pure manifestation rule, the court refused to select which test or to create a new test because the case before it did not require that it do so. Garcia, 876 S.W.2d at 853 n.20 (citing Dorchester Dev. Corp. v. Safeco Ins. Co., 737 S.W.2d 380, 383 (Tex. App.-Dallas 1987, no writ)).

Because the state's highest court has not endorsed a rule for determining when property damage occurs pursuant to an occurrence-based CGL policy, the very question is pending before the Texas Supreme Court on certification from the Fifth Circuit.  See OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc., ___ F.3d ___, No. 06-10727, 2007 WL 2258192, at **3, 5 (5th Cir. Aug. 8, 2007)(asking, "When not specified by the relevant policy, what is the proper rule

under Texas law for determining the time at which property damage
occurs for purposes of an occurrence-based commercial general
liability insurance policy?").  Disagreement exists among Texas
courts of appeal as to the answer.  Compare Summit Custom Homes,
Inc. v. Great Am. Lloyds Ins. Co., 202 S.W.3d 823, 827 (Tex.
App.–Dallas 2006, pet. filed)(not released for publication)
abrogated on different grounds by Lamar Homes, Inc. v. Mid-
Continent Cas. Co., ___ S.W.3d ___, 2007 WL 2459193, at **11-13
(Tex. Aug. 31, 2007), (applying the manifestation rule); State Farm
Fire & Cas. Co. v. Rodriquez, 88 S.W.3d 313, 322 (Tex. App.–San
Antonio 2002, pet. denied)(same); State Farm Mut. Auto. Ins. Co. v.
Kelly, 945 S.W.2d 905, 910 (Tex. App.–Austin 1997, writ
denied)(same); Cullen/Frost Bank of Dallas, N.A. v. Commonwealth
Lloyd's Ins. Co., 852 S.W.2d 252, 257 (Tex. App.–Dallas 1993, writ
denied)(same); Dorchester, 737 S.W.2d at 383 (same); with Pine Oak
Builders, Inc., 2006 WL 1892669, at **7-8 (applying the exposure
rule); Pilgrim Enters., Inc., 24 S.W.3d at 499 (same); see also
Don's Building Supply, Inc., 2007 WL 2258192, at *3 (identifying
Texas appellate cases that apply different trigger rules).

Prior to certifying the question to the Texas Supreme Court,
the Fifth Circuit took a definitive position on the issue.  In
Azrock Industries, the Fifth Circuit discussed the various trigger
theories and concluded that, under Texas law, the manifestation
theory applies to determine when coverage is triggered for property

damage claims.  _Azrock Indus._, 211 F.3d at 248; _see also_ _Am. Home_
_Assur. Co. v. Unitramp Ltd._, 146 F.3d 311, 313 (5th Cir.
1998)(applying Texas law)(noting that Texas courts have found that
property damage occurs when the damage becomes manifest).  Until
the Texas Supreme Court provides guidance on the issue, this court
is bound by Fifth Circuit precedent to apply the manifestation
rule.

With that in mind, the court now turns to the allegations in
the underlying pleadings.[64]  None of the complaints in the South
Carolina lawsuits alleged the precise timing of the manifestation
of the claimed property damage.  The Gardens Complaint stated,
"_Since completion of the Project_, problems with water infiltration
into the interior of the buildings has occurred."[65]  According to
the complaint, the water infiltration ultimately damaged the
property.  Similarly, the other three lawsuits dated the "moisture
intrusion" to sometime "subsequent to the buildings . . . being
opened for occupancy."[66]  Nothing else in the complaints fills in
the temporal details.  From the complaints, the court can adduce
that the damage manifested sometime after the infiltration of

---

[64]   As noted in the background section of this Memorandum Opinion, a
defendant in each underlying lawsuit (except the Riverwalk Lawsuit, in which
Plaintiff was named as a defendant) filed a third-party complaint against
Plaintiff.  None of those third-party complaints mentions the time period during
which the property damage allegedly occurred, but all are based entirely on the
primary allegations in the respective lawsuits.

[65]   The Gardens Complaint, ¶ 23.

[66]   Azalea Lakes Complaint, ¶ 22; Riverwalk Complaint, ¶ 22; Pope
Complaint, ¶ 21.

moisture, which occurred sometime after the buildings were occupied.

Plaintiff suggests that the court look to the certificates of occupancy in order to set the earliest date after which the damage appeared.  The court agrees that this is a proper use of extrinsic evidence.  The certificates of occupancy provide undisputed evidence of the dates on which the buildings were completed and occupied and would allow the court to assess whether coverage is potentially implicated.

Although the Texas Supreme Court explicitly has not recognized an exception to the eight-corners rule that would justify relying on the certificates of occupancy for this purpose, it has not ruled out consideration of extrinsic evidence of this nature.  In fact, in Fielder Road Baptist Church, the court distinguished, without overruling, an intermediate appellate decision that relied on an external stipulation to determine that the allegations in the pleadings did not state a potentially covered claim.  Fielder Rd. Baptist Church, 197 S.W.3d at 310 (citing Int'l Serv. Ins. Co. v. Boll, 392 S.W.2d 158, 160 (Tex. Civ. App.–Houston 1965, writ ref'd n.r.e.)).  In Boll, the petition alleged that the insured's son was driving the insured's car when the accident occurred, and the policy excluded claims arising from accidents occurring while Roy Hamilton Boll, a son of the insured, was driving.  Boll, 392 S.W.2d at 160.  Although not clear in the petition, the parties stipulated

that the insured's only son, Roy Hamilton Boll, was driving.  Id.
Based on that stipulation, the court found that the insurer had no
duty to defend the insured.  Id. at 161.

The certificates of occupancy, like the stipulation in Boll,
provide external undisputed information that readily clarifies
vague allegations in the pleadings.  The certificates confirm that
the residential projects made the subjects of the underlying
lawsuits were approved for occupancy in the latter half of 1998.[67]
Thus, the pleadings in the underlying lawsuits allege that water
infiltrated the buildings sometime after late 1998 and, at some
later date, caused the manifestation of mold, mildew, rot, rust,
and deterioration.  Based on the timing, coverage under Defendants
Indian Harbor and Atlantic's policies is potentially implicated.[68]

---

[67]     Appendix to Defendants Indian Harbor and Atlantic's Motion for
Summary Judgment Regarding the Gardens Lawsuit, Docket Entry No. 68, Ex. 2C,
certificates of occupancy for The Gardens units; Plaintiff's Response to
Defendants Indian Harbor and Atlantic's Motion for Summary Judgment, Docket Entry
No. 97, Ex. H, Affidavit of John Stiles, Attachs. 1-5 (unnumbered), certificates
of occupancy for Azalea Lakes units; Ex. I, Affidavit of John Stiles, Attachs.
1-4 (unnumbered), certificates of occupancy for Riverwalk units.

[68]     Defendants Indian Harbor and Atlantic suggest that this court follow
the reasoning in Markel International Insurance Co. v. Campise Homes, Inc., Civil
Action No. G-05-491, __2006 WL 1662604, at *2 (S.D. Tex. June 6, 2006)(not
reported in F. Supp.2d).  There, the district court found that the underlying
petitions failed to allege "the necessary facts to bring the underlying lawsuit
within coverage within the policy period," which covered March 26, 2001, to March
26, 2002, because the pleadings only indicated that home-building began in 2000
and the parties entered a purchase contract in August 2000.  Id.  The court
stated:

     There is simply too great of a gap between the date of the written
     purchase contract and the start of coverage.  The Petition lists
     approximately twenty problems with the construction of the home, but
     it fails to allege when those problems occurred or manifested
     themselves.  The Court cannot speculate or assume that they occurred
     within the policy period.

Id.  The district court then declined ruling on the duty to indemnify, finding

Defendants Indian Harbor and Atlantic point the court to the expert reports, testimony, documents, and other evidence produced in the underlying litigation as a means of further pinpointing the manifestation of damages.  Evidence of this nature, however, does not fall within the narrow exception to the strict eight-corners rule that is explained above.  First, the duty to defend is not affected by facts developed in the process of litigation.  See Cowan, 945 S.W.2d at 829.  Thus, it is immaterial to the court's ruling in this case that some evidence in the underlying suits seems to suggest that the damage alleged first manifested prior to the inception of any particular insurance policy.  Second, the evidence at least partially concerns the merits of the underlying suits.  Cf. Fielder Rd. Baptist Church, 197 S.W.3d at 309 (rejecting the use of extrinsic evidence that was relevant both to coverage and to the merits of the underlying action).  The nature

---

that it was "a fundamental mystery when the alleged property damage occurred" and, therefore, the indemnity issue had to wait until the conclusion of the underlying suit.  Id. at *3.

This court disagrees with the conclusion reached there.  An insurer must defend a lawsuit, even when the stated facts are insufficient to bring the case clearly within or without coverage, if coverage is *potentially* implicated.  See Loving Home Care, Inc., 363 F.3d at 528; Fielder Rd. Baptist Church, 197 S.W.3d at 309; Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141; Williams Consol. I, Ltd./BSI Holdings, Inc., 2007 WL 2178509, at *8.  This court's reading of the facts in that case indicates that coverage may have been available.  In point of fact, the district court's conclusion that the insurer may have had a duty to indemnify, despite having no duty to defend, necessarily depended on the implication that coverage was *potentially* available.

Moreover, courts are to read the pleadings liberally and to resolve all doubts in favor of the insured.  See King, 85 S.W.3d at 187; Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141; Gehan Homes, Ltd. v. Employers Mut. Cas. Co., 146 S.W.3d 833, 846 (Tex. App.-Dallas 2004, pet. filed).  The burden should not be on the insured to show that the underlying allegations claimed damage that conclusively occurred within the policy period.

and timing of the alleged damages are relevant, at the very least, to the state court plaintiffs' negligence claims and the apportionment of liability.

Even if the court were to consider the evidence, it would be unable to determine, as a matter of law, that the property damage manifested at some time outside of the three-year window covered by the insurance policies of Defendants Indian Harbor and Atlantic. Unlike the certificates of occupancy, the testimony and reports submitted by Defendants Indian Harbor and Atlantic are highly contested.  The evidence relates primarily to the when, where, and whys of some possible causes of water intrusion and the timing of the water intrusion itself, but does little more than hint at possible damage-manifestation dates.  The court is not at liberty to pick a date that the damage manifested in the absence of such information in the pending South Carolina court pleadings.

For this reason, the duty to indemnify also cannot be resolved at this time.  Resolution of the many disputed facts, which are evident in the extrinsic evidence submitted by Defendants Indian Harbor and Atlantic, is the subject of ongoing litigation in the Pope, Azalea Lakes, and Riverwalk lawsuits.  Although The Gardens Lawsuit has been settled, the issue still cannot be resolved on summary judgment due to the existence of factual disputes.

Defendants Indian Harbor and Atlantic's motions for summary judgment are **DENIED**.

## V.  Defendant AIC's Motion

Defendant AIC presents two arguments regarding its coverage liability:  1) claims for construction defects do not constitute occurrences under its policies; and 2) the business risk exclusions (exclusions j(6), k, and l in the insurance policies) remove Plaintiff's claims from coverage.  Because it has provided Plaintiff a defense under a reservation of rights, Defendant AIC argues, it did not breach the insurance contracts and is entitled to summary judgment on Plaintiff's breach of contract claim. Defendant AIC also seeks a declaration that the other insurance carriers, to the extent coverage exists under those policies, owe proportionate shares of defense and indemnity funds expended in the underlying lawsuits.

Defendants Atlantic, Indian Harbor, and Republic agree with Defendant AIC "that certain provisions and exclusions"[69] of the various insurers' CGL policies negate any duty to defend or to indemnify Plaintiff for the claims asserted in the underlying lawsuits.  However, they take issue with Defendant AIC's assertion that it is entitled to recovery from them for defense or indemnity expenses related to those lawsuits.  Defendants Indian Harbor and Atlantic base this contention on the arguments furthered in their own motions.

---

[69]    Defendants Indian Harbor and Atlantic's Response to Defendant AIC's Motion for Summary Judgment, Docket Entry No. 86, p. 2; Defendant Republic's Response to Defendant AIC's Motion for Summary Judgment, Docket Entry No. 90, p. 2 (unnumbered).

Plaintiff contends that the claims do form occurrences under the policies and that the cited exclusions do not negate coverage. Plaintiff argues that Defendant AIC has no right of recoupment against Plaintiff for The Gardens Lawsuit, which was settled and is no longer pending, but does not dispute that Defendant AIC may be entitled to contribution from the other insurers.  Although not explicitly stated, Plaintiff seems to have abandoned any claim for breach of contract against Defendant AIC by acknowledging that Defendant AIC has provided a defense in each of the underlying lawsuits and funded the settlement of The Gardens Lawsuit. Accordingly, summary judgment as to this claim should be granted.

A recent Texas Supreme Court decision forecloses Defendant AIC's argument that construction defects are not occurrences under CGL policies.  See Lamar Homes, Inc., 2007 WL 2459193, at *14 ("In summary, we conclude that allegations of unintended construction defects may constitute an 'accident' or 'occurrence' under a CGL policy and that the allegations of damage to, or loss of use of, the home itself may also constitute 'property damage' sufficient to trigger the duty to defend under a CGL policy.").  The opinion thoroughly discusses (and rejects) all of the points Defendant AIC raised in support of its argument that Plaintiff's insurance claims do not amount to occurrences under the policies.  See id. at **3-10.

The business-risk doctrine, which generally is incorporated in CGL policies as exclusions, holds that insurance "should not cover defective construction that results in damage to the insured's own work."  Pine Oak Builders, Inc., 2006 WL 1892669, at *3; see also Lennar Corp., 200 S.W.3d at 668, 670.  In the present policies, exclusion j(6) negates coverage for any property damage (not just that to the insured's product or work) caused by the insured's incorrectly performed work, but only as to projects that are not completed.  Exclusion k more narrowly avoids coverage for property damage only to the insured's product, and exclusion l avoids coverage for "property damage [only] to the insured's work arising after a construction project is finished and in the owner's possession."  Lennar Corp., 200 S.W.3d at 670 (internal quotation marks omitted)(construing an exclusion identical to exclusion l of the present policies).

The underlying pleadings in this case claim property damage that occurred subsequent to the completion and occupation of the residential projects.  Exclusion j(6) has no application to completed work and, thus, is inapplicable to the present claims. The scope of property damage alleged in the pleadings encompasses mold, mildew, rot, rust, and deterioration to the interior of the condominium buildings, not merely damage to Plaintiff's masonry work.  By their very terms, exclusions k and l are limited to damage to the insured's product or work and do not prevent coverage

for property damage to portions of a construction project other than the insured's own work.[70]  Neither exclusion k or l allows any of the insurers to escape the duty to defend.[71]

Defendant AIC has failed to demonstrate that, as a matter of law, it does not have the duty to defend Plaintiff in the underlying lawsuits.[72]  Because Defendants Indian Harbor and Atlantic also have failed to escape the duty to defend Plaintiff as to all four lawsuits, they share responsibility for the costs of defending Plaintiff.[73]  As discussed below, Defendant Republic is unable to avoid the duty to defend only as to the Riverwalk Lawsuit

_____

[70]     Defendant AIC intimates that the Pine Oak Builders, Inc. case, which interprets an exclusion identical to exclusion l in this case, supports their position that exclusion l operates to preclude coverage.  However, in the precipitating lawsuit that led to the insurance dispute in Pine Oak Builders, Inc., homeowners alleged property damage to homes *constructed by the insured*; in other words, they alleged damage to the insured's work.  See Pine Oak Builders, Inc., 2006 WL 1892669, at *1.  That is not the case here.

[71]     The court notes, as an aside, that an insurer is required to defend its insured against suit as long as the allegations potentially give rise to at least one claim covered by the insurance policy, regardless of the number of claims potentially not covered.  Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 201 (Tex. 2004)("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy.").

[72]     Plaintiff and Defendant AIC engage in some legal banter concerning the possibility of recoupment from Plaintiff of costs expended by Defendant AIC to defend the lawsuits and to settle The Gardens Lawsuit.  The court does not reach the issue, having determined that Defendant AIC is unsuccessful in its attempt to avoid the duty to defend and that the duty to indemnify is not yet ripe for consideration.

[73]     Defendant AIC points out that, in the responsive briefs, the other insurers do not contend that Defendant AIC would not be entitled to recovery for sums it has expended in the defense and indemnification of Plaintiff should any or all of the other policies impose the duty to defend and/or the duty to indemnify.  Rather, the other insurers rely on their contention that no coverage is available under their policies.  Having found this argument to be incorrect with regard to the duty to defend, the court is presented with Defendant AIC's request for proportionate shares of the defense costs.  The other insurers have put forth no opposition to the request under these circumstances, and the court finds it to be legally valid.

and the Pope Lawsuit and is proportionately responsible for the defense costs for those.

The duty to indemnify is an entirely different matter from the duty to defend.  The court cannot determine, at this time, the insurers' liability with regard to the duty to indemnify (as explained in prior sections of this Memorandum Opinion). Therefore, no determination can be made at this time regarding Defendants Indian Harbor and Atlantic's respective obligations, if any, to share in the settlement costs for The Gardens Lawsuit or, for that matter, any future costs related to the resolution of each of the other three lawsuits.  For the same reasons that Defendant Republic has no duty to defend in either The Gardens Lawsuit or the Azalea Lakes Lawsuit, which are explained in an ensuing section of this opinion, Defendant Republic has no duty to indemnify in those lawsuits.

Defendant AIC's motion for summary judgment is **GRANTED** as to Plaintiff's breach of contract claim and Defendant AIC's claim for contribution from Defendants Indian Harbor and Atlantic for defense costs in all four lawsuits and from Defendant Republic for defense costs in the Riverwalk Lawsuit and the Pope Lawsuit.  It is **DENIED** in all other respects.

### VI.  Defendant Republic's Motion

Defendant Republic moves for summary judgment on the basis that none of the state court claims fall within the coverage of

37

Defendant Republic's insurance policy.  Like Defendants Indian Harbor and Atlantic, Defendant Republic proposes the use of extrinsic evidence to decide, with regard to the Riverwalk Lawsuit and the Pope Lawsuit, when the alleged damage first occurred and argues that the evidence undisputably shows that it began prior to the inception of Defendant Republic's policy.  Unlike Defendants Indian Harbor and Atlantic, Defendant Republic asks the court to grant summary judgment as to the other two lawsuits, The Gardens Lawsuit and the Azalea Lakes Lawsuit, because the plaintiffs in those lawsuits initiated litigation prior to the effective date of Defendant Republic's insurance policy.  Defendant Republic's other arguments, which are that coverage is barred by the fortuity doctrine, that the underlying allegations do not amount to an occurrence under the policy, and that two policy exclusions avoid coverage, echo similar arguments raised by the other insurers in their motions.

Defendants Indian Harbor and Atlantic filed a response only to say that they believe the reasons in favor of summary judgment articulated by Defendant Republic also support their bid for judgment as a matter of law.  Defendant AIC, in its response, reiterates its objections and responsive arguments that it raised in opposition to Defendants Indian Harbor and Atlantic's motion.

In addition to reasserting all of the defensive arguments presented in its responses to other pending motions, Plaintiff

argues that, although the Azalea Lakes Lawsuit[74] was filed prior to the inception of Defendant Republic's policy, it did not name Plaintiff as a party to the original lawsuit.  By July 2006 when Plaintiff became a party, the argument continues, Defendant's policy was in effect.  Plaintiff also contends that the exclusions relied upon by Defendant Republic do not operate to negate coverage under these circumstances.

Most of the arguments raised by Defendant Republic have been addressed in prior sections of this opinion.  The court does not revisit them here.  However, Defendant Republic raises two arguments that have not yet been discussed: 1) that coverage does not exist under its policy for The Gardens Lawsuit and the Azalea Lakes Lawsuit; and 2) that exclusion j(5) precludes coverage.

To resolve the first matter, the court need not venture very far outside of the eight corners of the policy and each of the live underlying complaints.  Defendant Republic's policy was in effect September 18, 2003, through September 18, 2004.  The policy clearly states that it covers only property damage that occurs within the policy period.  The Gardens Lawsuit was filed on March 14, 2003, and the Azalea Lakes Lawsuit was filed on May 28, 2003.  The allegations against Plaintiff in those lawsuits are based entirely on the allegations of property damage in the original complaints.

---

[74]    As mentioned in a prior section, Plaintiff no longer pursues relief against the insurers based on The Gardens Lawsuit.  Thus, Plaintiff did not respond to Defendant Republic's motion as it concerns The Gardens.

No one contends that, by amendment, the plaintiffs in those lawsuits sought to include property damage that occurred after the initiation of the lawsuit and that certainly is not apparent on the face of the pleadings reviewed by this court.  The only property damaged alleged by the state court plaintiffs necessarily occurred prior to the filing of their lawsuits.  Under such circumstances, it is chronologically impossible to place the alleged property damage within Defendant Republic's policy coverage period.

Hence, Defendant Republic has no duty to defend the lawsuit. Although it is as of yet undetermined when the property damage occurred, the damage manifested no later than the filing of the lawsuit.  No facts may be proven consistent with the pleadings that would place the manifestation of damages at any time after March 14, 2003, in The Gardens Lawsuit or after May 28, 2003, in the Azalea Lakes Lawsuit.  The temporal realities associated with these two cases also rule out the possibility that Defendant Republic will have a duty to indemnify Plaintiff in either of those lawsuits.

Because Defendant Republic's policy does not cover the allegations in The Gardens Lawsuit and the Azalea Lakes Lawsuit, Defendant Republic, as a matter of law, cannot be found to have breached the insuring contract.  Plaintiff's breach of contract claim should be dismissed as to those two lawsuits.

Defendant Republic points to two exclusions in the policy, j(5) and j(6). The latter has been discussed in connection with Defendant AIC's motion. The former precludes coverage for damage to real property on which the insured is performing operations if the damage arises out of those operations. According to the language of the policy, the exclusion only concerns real property damage that occurs while the insured is performing operations. See Lennar Corp., 200 S.W.3d at 686 (stating that the plain meaning of an identical exclusion j(5) "indicates the exclusion applies only to 'property damage' arising *while* [the insured] is *currently* working on a project"). As noted in the discussion on exclusion j(6), all of the underlying lawsuits allege that the damage occurred after the projects were complete. Thus, the exclusion is inapplicable.

Defendant Republic's motion is **GRANTED** as to the duties to defend and to indemnify Plaintiff in The Gardens Lawsuit and the Azalea Lakes Lawsuit and as to the breach of contract claim with regard to those two lawsuits. The motion is **DENIED** in all other respects.

## VII.  Plaintiff's Motion

Plaintiff's motion is for partial summary judgment against all of the defendant insurers, seeking a ruling that they owe Plaintiff

a defense in the underlying lawsuits. All of the arguments in favor of and in opposition to Plaintiff's motion have been discussed previously in this opinion.

Plaintiff has succeeded, as explained above throughout, in demonstrating that the allegations asserted against Plaintiff in the Riverwalk Lawsuit and the Pope Lawsuit potentially give rise to coverage under all of the insurance policies at issue in this lawsuit. The allegations in the other two lawsuits potentially implicate only the policies of Defendants AIC, Indian Harbor, and Atlantic. Defendants unsuccessfully have contended that various exclusions negated coverage. Therefore, Plaintiff is entitled to summary judgment as to Defendants AIC, Indian Harbor, and Atlantic's defense obligations for all four lawsuits and as to Defendant Republic's defense obligations for the Riverwalk Lawsuit and the Pope Lawsuit.

Plaintiff's motion is **GRANTED.**

### VIII. Conclusion

Based on the foregoing, the court **DENIES** Defendants Indian Harbor and Atlantic's summary judgment motions, **DENIES IN PART AND GRANTS IN PART** Defendant AIC's summary judgment motion, **DENIES IN PART and GRANTS IN PART** Defendant Republic's summary judgment motion, and **GRANTS** Plaintiff's partial summary judgment motion.

This case is set for a status conference on October 16, 2007, 9:30 a.m. in Courtroom 700.

**SIGNED** in Houston, Texas, this 19th day of September, 2007.


Nancy K. Johnson
United States Magistrate Judge